318 So.2d 835 (1975)
Joe H. TALLY, Superintendent of Education of Smith County, et al.
v.
Watt CARTER, State Land Commissioner, et al.
No. 48262.
Supreme Court of Mississippi.
September 9, 1975.
Rehearing Denied October 6, 1975.
Larry E. Clark, Taylorsville, John B. Clark, Daniel, Coker, Horton, Bell & Dukes, Jackson, for appellants.
Corey & Corey, Meridian, for appellees.
Before GILLESPIE, ROBERTSON and BROOM, JJ.
*836 GILLESPIE, Chief Justice.
This case concerns the attempted reclassification by the State Land Commissioner of 16th section lands in Smith County from "forest lands" to "other lands" within the meaning of Mississippi Code Annotated section 29-3-39 (1972). Under the proceedings in chancery court, in accordance with the statutes hereinafter discussed, the chancery court confirmed a reclassification. Joe H. Tally, Superintendent of Education of Smith County, and other objectors to the reclassification, appealed to this Court.
Chapter 303, Laws of 1958, was enacted to improve the management of 16th section lands. The provisions of this Act, insofar as the classification and reclassification and the purposes thereof are concerned, are codified as Mississippi Code Annotated sections 29-3-31 et seq. (1972).
Section 29-3-31 provides that it is the duty of the State Land Commissioner, "using the services of all appropriate public agencies," to survey and classify all 16th section lands reserved for the support of township schools lying outside a municipality into two categories: (1) forest lands, and (2) other lands. This section provides that "The classification shall be determined according to the suitability of such lands to produce a maximum of revenue by proper utilization."
Section 29-3-33 provides that all lands, at least ninety percent of the total area of which is forest or waste lands, or which it is ascertained will produce a maximum of revenue by utilization to produce timber or other forest products, shall be classified as forest lands.
Section 29-3-35 authorizes the State Land Commissioner to supervise and direct the classification of all 16th section lands and to request the services of any public agency within the state, which is equipped and qualified to assist in such classification, and makes it the duty of such agency when so requested to assist the Land Commissioner in making such classification.
Section 29-3-37 provides that at any time when any such lands have been classified a classification report shall be compiled by the Land Commissioner and filed with the superintendent of education of the county in which such land is situated. The county board of supervisors is then required to immediately cause notice to be given of the completion of such classification and all parties in interest have a right to object to the classification as made. If no objections are made in writing and filed with the chancery clerk within the time allowed, "the classification as to such parcel or parcels of land shall be final." If objections are filed, the matter shall be heard by the chancery court and the court shall either confirm or modify the classification as circumstances shall demand.
Section 29-3-39 provides as follows:
It shall be the duty of the county superintendent of education to survey periodically the classification of all sixteenth section land under his jurisdiction and to recommend to the state land commissioner such changes in the classification of said land as he may deem advisable because of changes of conditions. From time to time the state land commissioner shall institute proceedings to reclassify any sixteenth section lands which he may deem advisable, and, when any land is so reclassified, the state land commissioner shall file a report thereof with the county superintendent of education and notice thereof shall be given in the same manner provided in section 29-3-37 with reference to the original classification. In all litigation which may result from the classification or reclassification of lands by the land commissioner under sections 29-3-31 to 29-3-39, said commissioner shall be represented by the attorney general, who shall have control of the litigation, but it shall be the duty of the various county boards of supervisors to furnish local legal assistance when requested so to do by the attorney general.
Section 29-3-41 provides that lands classified as forest lands shall not thereafter *837 be leased, and if such lands so classified as forest lands are under lease, such lands shall not be re-leased when the lease expires. Subsequent sections provide for the management of the forest lands by the State Forestry Commission under appropriate agreements with the board of supervisors. It is noted that the responsibility for the general supervision, management and control of 16th section lands is not specifically fixed by statute solely in any particular public body or officer. The statutes are conflicting and ambiguous. The board of supervisors, the county superintendent of education, and the State Land Commissioner all have authority and responsibility. In this respect section 29-3-57 states that generally it shall be the duty of the county superintendent of education to supervise all 16th section lands within his jurisdiction.
The case now before the Court involves Section 16, Township 4 N, Range 6 E in Smith County, 367 acres of which were classified as forest lands by the State Land Commissioner in 1966. A comprehensive report of the classification was prepared by the State Land Commissioner and filed with the County Superintendent of Education. Notice was given in accordance with section 29-3-37. No objections were filed to the classification and it was confirmed by the chancery court.
The reclassification involved in this suit was initiated by a group of lessees who held unexpired leases on certain portions of the lands which were classified in 1966 as forest lands. On February 22, 1972, these lessees went to the office of the State Land Commissioner and requested changes in the classification from forest lands to other lands. No sworn testimony was heard but the Land Commissioner complied with their request. No report was filed with the County Superintendent of Education as required by section 29-3-39. Nor did the State Land Commissioner request any assistance in such reclassification from the Forestry Commission or any other state agency. He attempted to comply with the provisions of section 29-3-39 by writing a letter to the County Superintendent of Education advising him that certain of the lessees holding leases on the lands had met with him and requested reclassification and he had reclassified the lands as requested. The board of supervisors did not immediately cause notice to be given of such reclassification as required by sections 29-3-39 and 29-3-37, but such notice was given approximately eighteen months later. Upon the notice being given, Joe H. Tally, Superintendent of Education of Smith County, and his minor children filed objections to the reclassification. These objections were answered by the various leaseholders, the appellees, and the issues thus made up were tried, resulting in a decree confirming the reclassification from "forest lands" to "other lands."
This appeal raises for the first time several questions next to be stated and answered.
1. The superintendent of education (superintendent) contends that the chancery court erred in overruling superintendent's motion to strike the answers to the objections, which answers were filed by the various lessees of the lands which had been reclassified by the State Land Commissioner to "other lands." There is no merit in this contention. The notice provisions of the statute, sections 29-3-39 and 29-3-37, provide that "a copy of such notice shall be mailed by the county superintendent of education to each lessee of any part of such lands." If the lessees are entitled to notice, they are entitled to be heard and whether the answer to the objections was a proper designation of their pleading is immaterial since the Court looks to the substance rather than the form. The lessees are interested parties because under section 29-3-63, a lessee, upon expiration of his lease, has the option to release such lands. The court did not err in overruling superintendent's motion to strike lessees' answer to the objections.
*838 2. Superintendent contends that the county superintendent of education is the only officer who can originate a reclassification of lands under section 29-3-39. This section, although ambiguous, makes it the duty of the superintendent of education to periodically survey the classification of all 16th section lands under his jurisdiction and make recommendations to the State Land Commissioner of such changes as he deems advisable. The next sentence authorizes the Land Commissioner to institute proceedings for the reclassification. Code sections 29-3-31 through 29-3-39, when read together, contemplate that the Land Commissioner shall use "the services of all appropriate agencies," in the original classification and any reclassification, and as to forest lands, the appropriate agency is obviously the State Forestry Commission. We hold that the State Land Commissioner has the authority to initiate reclassification proceedings.
3. The sufficiency of the procedure followed by the State Land Commissioner is questioned. The statute does not provide for any notice to be given by the State Land Commissioner before lands are reclassified under section 29-3-39. This Court will not undertake to promulgate rules for the State Land Commissioner in respect to notice and hearing of reclassification proceedings. This case must be reversed for the reasons hereinafter stated, which make it unnecessary for the Court to reach this constitutional question. Undoubtedly, the Land Commissioner has by this time, or will within due course, provide for an orderly administrative procedure in such reclassification proceedings which will meet the minimum requirements of due process.
4. The final and decisive question is whether the chancery court erred in confirming the reclassification of the lands in question. This requires a study of the statute to determine its purposes and the scope of the chancery court's function in respect to the reclassification of lands under Code section 29-3-39, and application of the statutes to the facts of this case.
It is appropriate for the Court to again state that the 16th section lands in question are held in trust by the State of Mississippi for school purposes. These lands were ceded to the United States by the State of Georgia in 1802 for the purpose of forming a state when the territory reached a population of 60,000, with each 16th section of every township appropriated for school purposes. After the area in question was surveyed and the admission of Mississippi as a State, the title and control of these sections vested in the State in trust for school purposes. Jones v. Madison County, 72 Miss. 777 (1895).
Chapter 303, Mississippi Laws of 1958, is a legislative recognition of the need for management of the timber resources on 16th section lands. In State ex rel. Patterson v. Buffalo Wood, Inc., 204 So.2d 853 (Miss. 1967), this Court held that the board of supervisors was mandatorily required to enter into agreements with the State Forestry Commission relative to the management of forest lands and the regulation of the sale of timber from such lands. Code section 29-3-31 providing for 16th section lands to be classified into two categories, (1) forest lands, (2) other lands, provides that "the classification shall be determined according to the suitability of such lands to produce a maximum of revenue by proper utilization." This is the key phrase in this Act, and provides the frame of reference for the other sections of the 1958 Act, including Code section 29-3-39 providing for the reclassification of such lands. The latter section provides that the county superintendent of education shall recommend to the State Land Commissioner such change in the classification of said land as he may deem advisable "because of changes in conditions." The same section provides that the State Land Commissioner shall institute proceedings to reclassify any 16th section lands which "he may deem advisable."
*839 Reading the several sections of the Act together, it is clear that any changes of conditions which would justify a reclassification must be changes that would require a reclassification to a more suitable use in order to produce a maximum of revenue. In short, the only standard contained in the Act of 1958, and the only one permissible because of the trust attached to these lands, is that such lands can be reclassified only when it is necessary to do so in order to produce a maximum of revenue.
The judicial review by the chancery court of the action of the Land Commissioner in reclassifying 16th section lands is limited to a determination of whether or not the reclassification is required in order to produce a maximum of revenue The burden of proof in this respect is on the proponent of reclassification.
The proof on behalf of the superintendent included the testimony of a management forester of the Mississippi Forestry Commission, who prepared a management plan for the lands in question. It showed that about 210 acres out of the 640 contained in the 16th section could be considered as manageable forest lands, the majority of which was being grazed by cattle. The report showed that 210 acres were well suited for growing pine timber. The witness found that if these lands were planted in pine trees, a 25-year-old crop would produce $8.84 per acre, and a 35-year-old crop would produce twice that amount.
All of the lands in question are presently under lease to the several lessees who were the successful litigants in the trial court, all of whom have applied for renewals of their leases which will soon expire. The record does not show what the lands would be leased for if the present lessees are granted their applications for 99-year leases. The proof shows that the board of supervisors customarily lease such lands for twenty cents per acre per year, with a few leases bringing forty cents per acre. The proof did not justify a finding, nor did the chancellor specifically find, that there were changes in conditions that would require a reclassification in order for the lands to produce a maximum of revenue for school purposes. The proof being insufficient to justify reclassification, the decree of the chancery court is reversed and the proceedings dismissed.
Reversed and dismissed.
RODGERS, P.J., and PATTERSON, INZER, SMITH, SUGG and WALKER, JJ., concur.